(15 Misc. Rep. 455.)

### DEMPSEY v. BALDWIN.

(City Court of New York, General Term. January 28, 1896.)

PLEADING—SUPPLEMENTAL ANSWER.

Leave to serve a supplemental answer in an action on a lease setting up a former judgment will not be denied on the ground that the answer did not clearly state whether defendant relied on a breach of the covenant to give possession or upon an eviction after possession.

Appeal from trial term.

Action by Guy C. Dempsey against Henry De Forest Baldwin on a lease. From an order denying a motion for leave to serve a supplemental answer, defendant appeals. Reversed.

Argued before CONLAN and BOTTY, JJ.

Henry De F. Baldwin, in pro. per.

John McCrone, for respondent.

CONLAN, J. This is an appeal from an order denying a motion for leave to serve a supplemental answer setting up a former judgment. The judge at special term denied the motion on the ground that the answer did not clearly state whether the defendant relied on a breach of the covenant to give possession or upon an eviction after possession. The answer is open to criticism on that point, but we think it is defendant's right to be allowed to plead recovery of a former judgment for what it may be worth on the trial of a second action. The pleadings on the first trial are only referred to on this appeal, and from the record we are unable to say what was litigated or passed upon at that trial. The competency of the matters sought to be interposed will be passed upon by the trial judge.

For the reasons above stated, the order appealed from will be reversed, and the parties remitted back to the special term, where the amendment will be allowed on such terms as may there be imposed. As the terms are left with the special term, there will be no costs of this appeal. Ordered accordingly.

---

(15 Misc. Rep. 481.)

### JACKSON v. ROYAL BENEFIT SOC.

(City Court of New York, General Term. January 28, 1896.)

LIFE INSURANCE—FORFEITURE OF POLICY—REINSTATEMENT.

Where a policy has been forfeited by nonpayment of premiums, the subsequent acceptance of the premiums by an agent of the insurance company will not reinstate the policy, unless the agent was authorized to receive the money or to waive the forfeiture.

Appeal from trial term.

Action by Herbert A. Jackson against the Royal Benefit Society. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before CONLAN and BOTTY, JJ.

Wahle & Stone, for appellant.

Max Altmeyer, for respondent.

BOTTY, J.    This action was brought to recover the sum of $250, alleged to be due and owing the plaintiff as the beneficiary of Agnes Cavanaugh, his common-law wife, under a certificate or policy of insurance issued to her by the defendant.    On the application of one Agnes Cavanaugh, the defendant, a domestic corporation engaged (among other things) in the insurance of lives, on Monday, the 14th day of May, 1894, issued to her a certificate or policy of insurance upon her life, by an instrument in writing, bearing date on that day, in consideration of the sum of 25 cents to it in hand paid, and a like amount to be paid on Monday of each week, or four weekly payments for one month, at its home office, and of the warranties and statements made in or on the application for membership, together with the provisions and conditions therein stipulated or indorsed thereon, whereby the defendant constituted the said Agnes Cavanaugh a member of Cosmopolitan Assembly, No. 3, of the Royal Benefit Society, and stipulated and agreed (among other things) to pay, upon the death of such member, a sum not exceeding the sum of $500 out of the benefit fund of the mortuary class of said society, which, at the option of the company, might be paid by it to the beneficiary mentioned in the application, or to any relatives by blood or connection by marriage of the member, or to any other person appearing to said society to be entitled equitably to the same by reason of having incurred expense on behalf of the member for his or her burial.    The certificate or policy provides:

"That in case of the death of the member within six months of the date thereof, but one-half of the amount otherwise payable shall be due thereunder, the certificate being in full force and binding after six months of completed membership."

It also provides:

"If, for any reason, payments are not collected by the representative of the society when due, it shall be the duty of the member, before the payment shall be in arrears four weeks, to bring or send said payments to the home office, or to the superintendent's office; and in the event of the failure to perform this duty, the society may cancel this certificate without notice to any person or persons interested therein.    No payment on this certificate will be recognized by the society as binding unless made to a duly-authorized collector, and by such collector entered at the time of the payment on the receipt card belonging with the certificate."

It also contains the following provision:

"Agents and collectors are not authorized to make, alter, or discharge contracts, or waive forfeitures, or receive payments on certificates in arrears beyond the time allowed by the regulations of the society, which in no case shall exceed four weeks."

The receipt card or book contained the following printed notices, viz.:

"Failure to pay dues over four weeks will avoid the policy."  "Failure of collector to call does not excuse you, as payments may be made at the office."  "No payment must be entered on the card, if the certificate is more than four weeks in arrears, unless reinstated in accordance with the rules of the society."

In the application for membership the insured is described as "married," and the beneficiary designated therein is one "Alfred Jackson, cousin."    Under date of September 6, 1894, an indorse-

ment was made by defendant upon the said policy of insurance in words following, to wit:

"The name of the holder of this certificate has been changed, by marriage, to Agnes Jackson.                                    J. C. Hurley, Secretary."

The books of the company were made to correspond with such change of name. Agnes Cavanaugh (or Jackson), the insured, paid all weekly premiums which accrued under the policy up to the 10th day of September, 1894, after which time she neglected and refused to pay more premiums. On October 9, 1894, the said Agnes Cavanaugh (or Jackson) died, and on October 13, 1894, proof of her death was duly furnished by plaintiff to the defendant.

To entitle the plaintiff to recover it was incumbent upon him to prove by a preponderance of evidence—First, that the deceased was insured by the defendant; second, that the weekly premiums which accrued under the policy were duly paid; third, the time of death of the deceased; fourth, that the policy was in full force at the time of her death; fifth, that the plaintiff was the beneficiary or person entitled to receive the amount due under the policy; sixth, that plaintiff furnished the defendant with satisfactory proofs of her death; seventh, that payment of the amount claimed to be due him was demanded of the defendant; eighth, that defendant refused to pay same. All other questions of fact having been duly established by competent evidence, the main questions at issue in this case, and which must be considered on this appeal, are the following: First, was the plaintiff the beneficiary or person entitled to receive the amount which might be due under said policy? Second, had the policy lapsed by reason of the nonpayment of the weekly premiums required to be paid by the terms of the policy? And, if so, was the forfeiture waived by the defendant?

The plaintiff, to establish the first proposition or question under consideration, to wit, whether he was the person who was entitled to receive the amount due, if any, under the policy, testified that he was the common-law husband of the deceased, and that he cohabited with her as such for a period of about two years prior to her death. It will here be noted that the beneficiary named in the application for membership is one "Alfred Jackson, cousin" of the deceased. But, in furtherance of his claim, he testified that one Manasha, who was a collector of the defendant, had a conversation with him and the insured, and, as a result of this conversation, Manasha caused the marital name of the insured, viz. Agnes Jackson, to be indorsed on the policy by defendant, and that he returned the policy, so indorsed, to the insured, and at the same time informed the plaintiff that his name was entered on the books of the company as the beneficiary under the policy. No proof, however, was adduced on the part of the plaintiff showing that there was an actual change in the name or description of the beneficiary, either on the application for membership, policy of insurance, or the books of the company. It is evident, however, that, although plaintiff was not a "cousin" of the deceased, he was the person intended as the beneficiary under the policy; but, aside from this, the claim that plaintiff was the husband

of the deceased would entitle him to receive the amount which might be due under the policy, and defendant would be protected in making such payment.     This question was, therefore, properly submitted as a question of fact to the jury for its determination.

To establish the second proposition or question, to wit, that the policy had not lapsed by reason of the nonpayment of the weekly premiums due under the policy, and, if so, that the forfeiture was waived by the defendant, the plaintiff testified as follows:     That on the morning of the 13th day of October, 1894, four days after the death of the insured, he paid or caused to be paid to one Philip Fisher, one of defendant's collectors, three weeks' premiums, amounting to the sum of 75 cents, which were then due under the policy, and for which he receipted on the pay card.     This receipt shows that the amount was so paid to Fisher on October 13th.     The plaintiff further testified that, before making such payment, he informed Mr. Fisher that his wife, Agnes Jackson, was dead, and that he (plaintiff) supposed that the policy had lapsed by reason of the nonpayment of the four weeks' premium which had accrued under the policy prior to the death of said insured, but that said Fisher then informed him that he (Fisher) had advanced or paid the premiums to the defendant in order to prevent a lapse of the policy, and that, relying on said representation, he thereupon paid the sum of 75 cents.     The defendant's counsel moved to strike out that part of the plaintiff's testimony wherein he said "that the agent took the money, and said he had made payments, so that the policy would not lapse."     The learned trial justice ruled that he would allow that testimony to stand, provided Fisher was put on the stand to prove it, to which ruling the defendant excepted.     The plaintiff also testified that, shortly after the making of the payment to the collector, and on the same day, he went to the company, and obtained blanks for the proofs of death, which he filled out and handed in to the company.     He was told to call on the following Monday, which he did, and was then told that the policy had lapsed, and that the company would not pay the amount of the policy.

Mr. Fisher was thereafter called as a witness on behalf of the plaintiff, but an examination of his testimony does not in any wise bear out the plaintiff's assertions, except as to the fact that he received or collected from him, on October 13, 1894, three weeks' premiums, amounting to the sum of 75 cents, for which he receipted. On cross-examination, this witness testified as follows:

"When I called, plaintiff showed me the book or card, and asked, 'How much does my wife owe you?' I looked at my book, and said, 'There are about five weeks due,' and plaintiff said, 'I haven't got more than seventy-five cents.' I took it, and said, 'Maybe it will be all right.' I received it on the 13th for the three weeks before, and put down the date when I received the money. Plaintiff, after this, followed me into the hall, and said, 'She is dead.' I asked him, 'Who is dead?' And he said. 'My wife; she is buried.' And I said, 'My good God! If she is dead and buried, you cannot give me seventy-five cents. If any one is buried, the policy may be canceled or lapsed.' I offered Mr. Jackson to take the money back. I tendered him the money. He said, 'You can keep the money. We will see what we can do. Maybe we will do something for you good.' I made a report to the company of this transaction. I saw Mr. Fodor, one of the officers [general manager] of the company, and said some-

thing to him about the seventy-five cents after I made my account. Mr. Fodor refused to take the seventy-five cents from me. He ordered me to give them back to Mr. Jackson. The company never got the seventy-five cents. I have it in my possesson. I went to see Mr. Jackson the same day, but it was locked, —nobody was at home."

Another witness, one Albert Bennett, who was called on behalf of the plaintiff, testified in substantially the same vein as did the plaintiff, and corroborated him as to the conversation which took place between the plaintiff and Fisher, and also as to the fact of the presentation of the proofs of death of plaintiff's wife to defendant on October 13th, and that there was nothing said at that time about the policy having lapsed. The receipt card (plaintiff's Exhibit B) shows that the last payment of premiums accruing under the policy prior to the death of the insured was made on August 28, 1894, for the week ending September 10, 1894, and that four weekly payments, from September 10th to October 8th, had accrued on October 9th. No evidence as to the actual payment by Fisher to defendant, on behalf of the insured, of the premium, or any part thereof, which accrued between the period of time from September 10th to October 8th, in order that the policy should not lapse, was adduced on the part of the plaintiff; but plaintiff's sole reliance, to establish said payment, is based on Mr. Fisher's alleged statement to him that he had paid same to the defendant. This testimony, however, is not borne out by Fisher, who, under cross-examination, flatly contradicts the plaintiff on all material points as to the nature of the alleged interview had between himself and the plaintiff at the time he collected the 75 cents on October 13th. The mere alleged declaration of Mr. Fisher, if actually made, "that he paid such premiums to the defendant, so that the policy should not lapse," was not competent evidence of payment having been made, and is of no binding force as against the defendant. There is absolutely no proof that such payment was in fact made by him, on behalf of the plaintiff, nor was any evidence offered on that point. Furthermore, the uncontradicted testimony of the witness Fisher, as well as the uncontradicted testimony of the witnesses called on behalf of the defendant, shows that the premium paid by plaintiff to Fisher, defendant's collector, on October 13th, was never received or accepted by the defendant; but, to the contrary, the defendant refused to accept the same.

At the close of the plaintiff's case, and again at the close of the whole case, and before its submission to the jury, the defendant duly moved to dismiss the complaint because the plaintiff had failed to establish his cause of action. These motions were denied, and the defendant duly excepted thereto. I am of the opinion that, owing to the fact that the four weeks' premiums which accrued under the policy of insurance remained unpaid at the time of the death of the insured, the defendant's subsequent refusal to accept the same caused a lapse or forfeiture of the policy and all rights of the plaintiff thereunder. The mere payment of such premiums, after the death of the insured, to Mr. Fisher, who was a mere collector of the defendant, and not authorized to receive the money, or waive

the forfeiture, as provided by the terms of the policy, did not revive the policy. In view of the evidence adduced, and the law applicable to this case, it was error to deny the defendant's motion for a dismissal of the complaint, and it was likewise error to submit the case to the jury, under the circumstances.

The jury having rendered a verdict in favor of the plaintiff, the defendant promptly moved for a new trial upon the exceptions taken at the trial, and upon the ground that the verdict was contrary to the evidence and contrary to law, which motion was denied, and exception duly taken thereto, and an order duly entered denying said motion. The verdict being against the evidence and against the law, it was error to deny the defendant's motion for a new trial. The judgment and order appealed from must therefore be reversed, and a new trial granted, with costs to appellant to abide the event.

Judgment and order appealed from reversed, and new trial granted, with costs to appellant to abide the event.